

Michael Graybill
5610 Berkeley Road.
Goleta, CA 93117
Michael.R.Graybill@gmail.com
805-698-0542

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

Michael Graybill,

*Plaintiff,*

CV24-5554-UA

V.

BlackRock, Inc.,

Laurence Fink,

Robert S. Kapito,

The United States of America,

Department of Defense,

National Reconnaissance Office,

Space Exploration Technologies Corp. (SpaceX),

Elon Musk,

*Defendants,*

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

**Introduction**

1. Plaintiff Michael Graybill brings this action against Defendants The United States of America, the Department of Defense, the National Reconnaissance Office, Space Exploration Technologies Corp. (SpaceX), and Elon Musk for damages and injunctive relief arising out of the unlawful and unauthorized manipulation and control of Plaintiff's brain through a satellite system equipped with remote neural manipulation technology.

**Jurisdiction and Venue**

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1346(b) (Federal Tort Claims Act).
3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district.
4. The United States is liable for the negligent or wrongful acts or omissions of its employees acting within the scope of their employment under circumstances where the United States, if a private person, would be liable to Plaintiff in accordance with the law of the place where the act or omission occurred.

**Parties**

4. Plaintiff Michael Graybill is a citizen of California.
5. Defendant The United States of America is sued through its agency, the Department of Defense, under the Federal Tort Claims Act, which provides an exemption from sovereign immunity for certain torts committed by government agents.
6. Defendant Department of Defense is an agency of the United States government.

7. Defendant National Reconnaissance Office is an agency of the United States government responsible for the design, construction, and operation of reconnaissance satellites.

8. Defendant Space Exploration Technologies Corp. (SpaceX) is a private corporation organized under the laws of the State of Delaware, with its principal place of business in Hawthorne, California.

9. Defendant Elon Musk is the founder, CEO, and owner of SpaceX, and is a citizen of the State of Texas.

10. Defendant BlackRock, Inc. is a multinational investment management corporation organized under the laws of the State of Delaware, with its principal place of business in New York, New York.

11. Defendant Robert S. Kapito is the current President of BlackRock Inc.

12. Defendant Laurence Fink is the Chief Executive Officer of BlackRock Inc.

**Factual Allegations**

10. On March 3, 2023, SpaceX launched a satellite from Vandenberg Space Force Base.

11. This satellite was designed for the Department of Defense to be controlled by the National Reconnaissance Office.

12. The satellite was publicly announced as a Starlink satellite owned by SpaceX and its owner, Elon Musk.

13. In actuality, the satellite was a spy satellite equipped with remote neural manipulation technology.

14. This technology was developed to establish a permanent connection to Plaintiff's brain, allowing the Department of Defense the ability to manipulate and control Plaintiff remotely via National Reconnaissance Office satellite operators.

15. On April 7, 2023, this satellite system was used to make permanent changes to Plaintiff's brain function, causing permanent brain damage.

16. This satellite system is still being utilized by the Department of Defense to violate Plaintiff's constitutional and human rights.

17. Elon Musk, as the legal owner of SpaceX, has unfettered access to this system and has current and relevant knowledge of the misuse of the system and abuse of the Plaintiff by former and current government agents and contractors.

18. Elon Musk and the Department of Defense, has permitted Black Rock access to the satellite system that is currently monitoring the Plaintiff.

19. Defendant BlackRock, Inc. has been directly involved in the daily harassment and torture of the Plaintiff, using the satellite system to communicate with Plaintiff against his will and steal the Plaintiff's intellectual property which was disseminated to companies they have a vested interest in for development.

20. BlackRock Inc's. President Robert S. Kapito and Laurence Fink are involved in the Department of Defense's intentional misusing of the satellite link to harassingly communicate with the Plaintiff in private property without the Plaintiff's consent and against his wishes.

21. The Plaintiff was never compensated for his intellectual property, his pain and suffering, or his time spent forced to communicate with the Department of Defense and BlackRock Inc. from 2020 to present day.

**Claims for Relief**

**Count I: Violation of Constitutional Rights**

18. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

19. Defendants, acting under color of law, have violated Plaintiff's rights under the Fourth, Fifth, and Eighth Amendments to the United States Constitution by conducting unlawful surveillance, manipulation of Plaintiff's brain, and subjecting Plaintiff to cruel and unusual punishment.

**Fourth Amendment Violations**

20. The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures.

21. By using remote neural manipulation technology to establish a permanent connection to Plaintiff's brain, Defendants have conducted an unreasonable and unauthorized search and seizure of Plaintiff's most private and intimate thoughts and functions.

22. This intrusive surveillance and control constitute a severe violation of Plaintiff's Fourth Amendment rights.

**Fifth Amendment Violations**

23. The Fifth Amendment to the United States Constitution guarantees that no person shall be deprived of life, liberty, or property without due process of law.

24. By permanently altering Plaintiff's brain function without Plaintiff's consent, Defendants have deprived Plaintiff of liberty and bodily integrity without due process.

25. The covert use of this technology, which resulted in permanent brain damage, violates Plaintiff's right to substantive due process under the Fifth Amendment.

**Eighth Amendment Violations**

26. The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment.

27. Defendants' actions in subjecting Plaintiff to continuous and unauthorized neural manipulation constitute cruel and unusual punishment, as they have caused severe physical and psychological pain and suffering.

28. The permanent changes to Plaintiff's brain function inflicted by Defendants are disproportionate to any conceivable justification and amount to inhumane and degrading treatment, thus violating the Eighth Amendment.

29. Defendants' use of this technology to exert control and inflict harm on Plaintiff without legal justification or oversight reflects a deliberate indifference to Plaintiff's constitutional rights and well-being.

**Summary of Constitutional Violations**

30. As a direct and proximate result of Defendants' actions, Plaintiff has suffered significant harm, including permanent brain damage, severe emotional distress, and ongoing violations of constitutional rights.

31. Defendants' conduct, acting under color of law, represents a gross abuse of power and a deliberate disregard for the constitutional protections afforded to Plaintiff.

**Count II: Violation of Human Rights**

20. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

21. Defendants' actions constitute a violation of Plaintiff's human rights, including the right to privacy and the right to be free from inhumane treatment.

22. The Universal Declaration of Human Rights (UDHR), to which the United States is a signatory, guarantees fundamental human rights and freedoms, including the right to privacy (Article 12) and the right to be free from torture or to cruel, inhuman, or degrading treatment or punishment (Article 5).

23. Defendants' use of remote neural manipulation technology to establish a permanent connection to Plaintiff's brain constitutes an egregious violation of these rights. By enabling the continuous monitoring and manipulation of Plaintiff's brain functions, Defendants have intruded upon Plaintiff's right to privacy in the most intimate and invasive manner possible.

24. The European Convention on Human Rights (ECHR), though not directly applicable to the United States, sets forth similar protections in Article 8 (right to respect for private and family life) and Article 3 (prohibition of torture). These principles reflect widely accepted international standards for the protection of human rights.

25. Defendants' actions have caused Plaintiff severe and ongoing physical, psychological, and emotional harm, amounting to cruel, inhuman, and degrading treatment. This includes permanent brain damage and severe emotional distress resulting from the knowledge and experience of being continuously monitored and controlled.

26. The use of such technology without Plaintiff's knowledge or consent represents a gross abuse of power and a violation of the most basic principles of human dignity and autonomy.

27. As a direct result of Defendants' actions, Plaintiff has suffered significant harm and is entitled to relief for these violations of internationally recognized human rights standards.

**Count III: Negligence**

**Factual Basis for Negligence**

40. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.
41. Defendants owed a duty of care to Plaintiff to ensure that their actions and the technology they developed, deployed, and utilized did not cause harm to individuals, including Plaintiff.
42. This duty of care included but was not limited to:

a. Ensuring that the satellite technology was not used for unlawful purposes;

b. Properly supervising and controlling the use of the technology by authorized personnel;

c. Conducting adequate testing and validation of the satellite technology to prevent unauthorized use or malfunction;

d. Informing and obtaining consent from individuals potentially affected by the deployment and use of such technology;

e. Implementing safeguards to prevent unauthorized access and misuse of the technology.

43. Defendants breached this duty of care in several ways:

a. Failing to properly supervise and control the use of the satellite technology, thereby allowing it to be used for unlawful purposes;

b. Allowing the satellite equipped with remote neural manipulation technology to establish a permanent connection to Plaintiff's brain without Plaintiff's knowledge or consent;

c. Failing to conduct adequate testing and validation of the satellite technology to prevent unauthorized use or malfunction, leading to the manipulation and control of Plaintiff's brain;

d. Neglecting to implement adequate safeguards to prevent unauthorized access and misuse of the technology, resulting in permanent changes to Plaintiff's brain function and ongoing harm;

e. Failing to inform Plaintiff of the risks associated with the satellite technology and obtain Plaintiff's informed consent prior to its use.

**Proximate Cause and Damages**

    44. As a direct and proximate result of Defendants' negligence, Plaintiff has suffered and continues to suffer significant harm, including but not limited to:

a. Permanent brain damage caused by the unauthorized manipulation and control of Plaintiff's brain;

b. Severe emotional distress and mental anguish resulting from the knowledge and experience of being continuously monitored and controlled without consent;

c. Physical pain and suffering due to the adverse effects of the unauthorized neural manipulation;

d. Loss of autonomy and personal freedom as a result of Defendants' actions;

e. Economic damages, including medical expenses and loss of earning capacity, due to the permanent brain damage and ongoing harm inflicted by Defendants.

**Legal Basis for Negligence**

45. Defendants' actions constitute negligence under common law principles, which hold that individuals and entities are liable for harm caused by their failure to exercise reasonable care.

46. Additionally, Defendants' conduct violated specific statutory and regulatory duties designed to protect individuals from unauthorized surveillance, manipulation, and control, including but not limited to:

a. The Federal Tort Claims Act (28 U.S.C. § 1346(b)), which waives sovereign immunity for certain torts committed by government agents and imposes liability for negligent acts;

b. Various federal and state statutes and regulations governing the use of surveillance and neural manipulation technologies, which establish standards of care and impose duties to prevent unauthorized use and harm.

**Request for Relief**

47. As a result of Defendants' negligence, Plaintiff is entitled to compensatory damages for the physical, emotional, and economic harm suffered, including but not limited to:

a. Medical expenses incurred as a result of the permanent brain damage and ongoing harm;

b. Compensation for pain and suffering, emotional distress, and loss of enjoyment of life caused by Defendants' actions;

c. Economic damages for loss of earning capacity and future medical expenses related to the permanent brain damage and ongoing harm;

d. Any other damages deemed appropriate by the Court to fully compensate Plaintiff for the harm suffered as a result of Defendants' negligence.

48. Plaintiff also seeks injunctive relief to prevent Defendants from continuing to use the satellite system to manipulate and control Plaintiff's brain, thereby preventing further harm and protecting Plaintiff's constitutional and human rights.

49. Plaintiff requests an award of reasonable attorneys' fees and costs incurred in bringing this action, as well as any other relief deemed just and proper by the Court.

**Conclusion**

50. Defendants' negligence has caused Plaintiff significant and ongoing harm. Plaintiff seeks relief from this Court to address the harm suffered and to prevent further violations of Plaintiff's rights.

**Count IV: Intentional Infliction of Emotional Distress**

26. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

27. Defendants' actions in manipulating and controlling Plaintiff's brain were extreme and outrageous.

28. Defendants' actions were intended to cause, and did cause, severe emotional distress to Plaintiff.

**Defendants' Use of Psychological Weapons and Terroristic Acts**

47. Defendants, through their use of remote neural manipulation technology, acted as terrorists by employing psychological weapons to attack Plaintiff.

48. The remote neural manipulation technology used by Defendants constitutes a psychological weapon, designed to exert control over and inflict harm upon Plaintiff by altering brain function and inducing severe emotional distress.

49. Defendants' actions in deploying and utilizing this technology were intended to terrorize Plaintiff, causing fear, helplessness, and psychological trauma.

50. Defendants' conduct meets the criteria for acts of terrorism as defined under federal law, including 18 U.S.C. § 2331, which defines terrorism as activities that involve violent acts or acts dangerous to human life that are intended to intimidate or coerce a civilian population.

51. By targeting Plaintiff with this psychological weapon, Defendants sought to exercise control over Plaintiff and cause severe emotional and psychological harm, constituting acts of terror.

**War Crimes Committed by Defendants**

52. Defendants' actions in using remote neural manipulation technology to attack Plaintiff also constitute war crimes under international law.

53. The Rome Statute of the International Criminal Court (ICC) defines war crimes to include inhumane acts intentionally causing great suffering or serious injury to body or to mental or physical health (Article 8).

54. The use of remote neural manipulation technology to permanently alter Plaintiff's brain function and cause severe emotional distress qualifies as an inhumane act that has resulted in significant suffering and injury to Plaintiff's mental and physical health.

55. Defendants' deployment of this technology constitutes a deliberate and systematic attack on Plaintiff's human dignity, autonomy, and well-being, amounting to war crimes.

**Conclusion**

56. As a direct and proximate result of Defendants' intentional infliction of emotional distress through the use of psychological weapons and acts of terrorism, Plaintiff has suffered severe and ongoing emotional and psychological harm.

57. Plaintiff seeks compensatory damages for the severe emotional distress and psychological trauma inflicted by Defendants' actions, including costs for therapy and other medical treatments required to address the harm suffered.

58. Plaintiff also seeks punitive damages to punish Defendants for their extreme and outrageous conduct and to deter similar actions in the future.

59. Plaintiff requests an award of reasonable attorneys' fees and costs incurred in bringing this action, as well as any other relief deemed just and proper by the Court.

**Count V: Theft of Intellectual Property**

47. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

48. Plaintiff is the owner of certain intellectual property, including proprietary ideas, inventions, and technological concepts that have significant economic value.

49. Defendants, through the unauthorized use of remote neural manipulation technology, accessed and utilized Plaintiff's intellectual property without Plaintiff's knowledge or consent.

50. Defendants' actions constitute theft of intellectual property in violation of the Economic Espionage Act of 1996 (18 U.S.C. §§ 1831-1839), which criminalizes the theft or misappropriation of trade secrets for the benefit of anyone other than the owner.

51. Defendants' actions also violate the Defend Trade Secrets Act of 2016 (18 U.S.C. § 1836), which provides a federal private right of action for the misappropriation of trade secrets.

52. As a result of Defendants' unauthorized use and exploitation of Plaintiff's intellectual property, Plaintiff has suffered and continues to suffer significant economic harm, including loss of potential revenue and competitive advantage.

53. Defendants' conduct was willful, malicious, and undertaken with the intent to benefit from Plaintiff's intellectual property without providing proper compensation or recognition.

**Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Award Plaintiff compensatory damages in an amount to be determined at trial;

B. Award Plaintiff punitive damages in an amount to be determined at trial;

C. Grant injunctive relief prohibiting Defendants from continuing to use the satellite system to manipulate and control Plaintiff's brain and to cease all use of Plaintiff's intellectual property;

D. Award Plaintiff reasonable attorneys' fees and costs; and

E. Grant such other and further relief as the Court deems just and proper.

**Demand for Jury Trial**

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Michael Graybill

/s/MichaelGraybill

6/12/24